UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **EVELYN NEAL, individually and as Mother of MARVIN GARDNER, deceased; and NELAYAH GARDNER (a minor through her guardian ad litem TRILONNI LEWIS),**<br><br>**Plaintiffs,**<br><br>v.<br><br>**CITY OF FRESNO, a municipal corporation; JERRY DYER, in his capacity as Chief of Fresno Police Department and in his individual capacity, POLICE OFFICER JOHN DOE NO.1 in his individual capacity; and DOES 1 through 50, inclusive,**<br><br>**Defendants.** | **1:13-CV-00292-LJO-SAB**<br><br>**ORDER ON MOTION FOR SUMMARY JUDGMENT**  (Docs. 19 & 20) |

## I. INTRODUCTION

This case concerns the circumstances surrounding the death of Marvin Gardner ("Gardner") on March 17, 2011. While responding to a 911 call for a burglary with a hostage, Fresno Police Officer Ayello shot and killed Gardner as he fled the scene. Evelyn Neal, Garnder's mother, and Nelayah Gardner, Gardner's daughter, as represented through her guardian ad litem, (collectively "Plaintiffs") advance five causes of action under 42 U.S.C. § 1983, including violations of Plaintiffs' fourth and fourteenth amendment rights, as well as claims for wrongful death and conspiracy to use excessive force. Now before the Court is the City of Fresno, Jerry Dyer, and Police Officer Joe Doe No. 1's[1] (collectively "Defendants") Motion for Summary Judgment ("MSJ") on all claims. Doc. 19. Plaintiffs

---

[1] Although Plaintiff would have the right to replace Doe with the individual officer at a later date, Plaintiff never amended the Complaint to name any individual Officer as a defendant. For the purposes of this ruling, the distinction between Doe and an individually named officer is irrelevant.

1

oppose summary judgment and ask the court for additional time for discovery. Doc. 20. Defendants replied. Doc. 23. The motion was set for hearing February 19, 2015, but the hearing was vacated and the matter submitted for decision on the papers pursuant to Local Rule 230(g). Doc. 24.

## II. PROCEDURAL HISTORY

On February 27, 2013, Plaintiffs brought a complaint against Defendants under 42 U.S.C. § 1983 ("§ 1983"). Doc. 1. Plaintiffs filed a first amended complaint on July 3, 2013. Doc. 11. Plaintiffs subsequently filed a second amended complaint ("SAC") on August 13, 2013, asserting § 1983 claims for violations of their fourth and fourteenth amendment rights, as well as claims for wrongful death and conspiracy to use excessive force.[2] Doc. 14. Defendants filed their answer on August 13, 2013, asserting thirty-three affirmative defenses. Doc. 15. Defendants then filed a motion for summary judgment arguing that Plaintiffs have neither presented any genuine issue of disputed fact nor conducted any discovery which might have provided evidence of a factual dispute. Doc. 19. Filed in conjunction with their MSJ, Defendants filed: (1) excerpts from the deposition of Trilonni Lewis; (2) the declaration of Officer Greg Ayello ("Officer Ayello"); (3) Plaintiffs' response to production requests; and (3) Gardner's official autopsy report. Docs. 19-1 through 19-9. Plaintiffs filed their opposition ("the opposition") to the MSJ on January 29, 2015, in which Plaintiffs requested an extension of time to allow for additional discovery. Doc. 20. Plaintiffs have not filed any exhibits with the Court. Defendants replied on February 10, 2015. Doc. 23.

## III. FACTUAL BACKGROUND[3]

On March 17, 2011, shortly after 8:00am, the Fresno Police Department ("FPD") was informed of an in progress robbery at the Cash Express in downtown Fresno. Defendants' Separate Statement of

---

[2] The Court interpreted Plaintiffs' papers to the best of its abilities; however, the claims are confusing and convoluted. Thus the Court only addresses the claims it believes are articulated in the SAC.

[3] Because on summary judgment the evidence of the non-moving party is assumed to be true and disputed facts are construed in the non-movants favor, the Court sets forth the undisputed facts and notes those disagreements of fact that are relevant to this decision.

2

Undisputed Facts ("DSSUF"). Doc. 19-8 at ¶ 1. Responding officers, including Officer Ayello, were informed that two male suspects, who were believed to be armed, threatened a civilian employee inside the Cash Express. *Id*. at ¶¶ 2-3. In their opposition to the MSJ, the Plaintiffs assert that it was Gardner's accomplice who threatened the civilian employee with a gun, forced her to open the safe, and subsequently tied her up.[4] Doc. 20 at 2. According to Officer Ayello's version of events, which is undisputed, while setting up a perimeter around the Cash Express, Officer Ayello heard a loud bang as if someone had kicked open a door. Declaration of Greg Ayello. Doc. 19-2 at ¶ 3. Officer Ayello stated that as he went to investigate the noise, he saw a man, later identified as Gardner, wearing a heavy coat and bandana covering his face scaling a fence behind the Cash Express building. *Id.* at ¶ 4. Officer Ayello, who was in uniform at the time, identified himself verbally as police and then ordered Gardner to stop. DSSUF at ¶ 5.  Officer Ayello commanded Gardner to freeze several times, however, Gardner did not comply and, upon reaching the other side of the fence, Gardner began to lift his coat using both of his hands. Declaration of Greg Ayello. Doc. 19-2 at ¶ 4. Plaintiffs assert that Gardner was raising his hand in an effort to surrender, but offer no evidentiary support for this assertion. Doc. 20 at 2. According to Officer Ayello's declaration, based upon information Officer Ayello received from emergency dispatch, Officer Ayello believed Gardner may have been armed. Declaration of Greg Ayello. Doc. 19-2 at ¶ 5. Fearing for his safety and the safety of his fellow officers, Officer Ayello shot Gardner when Gardner began to lift his coat because Gardner appeared to be reaching for a weapon. *Id*.  Officer Ayello then continued to cover Gardner until other officers arrived and were able to place Gardner under arrest. *Id.*.

Plaintiffs allege that after shooting Gardner, Officer Ayello physically struck Gardner and placed him in handcuffs. SAC at 3. Plaintiffs further assert that Officer Ayello refused to remove the handcuffs to allow emergency medical treatment to be provided. Doc. 20 at 3. However, Plaintiffs again offer no

---

[4] These allegations, like all of Plaintiffs' allegations, are unsubstantiated by any witness declarations or other evidence.

3

evidentiary support for either of these assertions.

Eventually, the second suspect was apprehend on the roof of the Cash Express building where a loaded handgun was located. Declaration of Greg Ayello. Doc. 19-2 at ¶ 6. It is undisputed that Gardner was unarmed at the time he was shot. Doc. 21 at 3. Gardner was taken by paramedics to Community Regional Medical Center where, after receiving emergency medical care, he died from a gunshot wound. Fresno County Coroner's Report Doc. 19-4 at 42.

## IV. <u>REQUEST FOR ADDITIONAL DISCOVERY</u>

Pursuant to Federal Rules of Civil Procedure Rule 56(f) ("Rule 56(f)"), Plaintiffs request that the Court stay decision on the motion for summary judgment so that Plaintiffs may pursue additional discovery. Specifically, Plaintiffs seek to obtain: (1) a report that purports to show prior cases of the FPD using excessive force; and (2) any and all internal affairs information concerning Officer Ayello as well as Officer Ayello's personnel files. Doc. 20 at 4.

In order to be entitled leave to conduct additional discovery under Rule 56(f), the moving party must show that additional discovery would uncover specific facts which would preclude summary judgment. *See Maljack Products, Inc. v. Goodtimes Home Video Corp*., 81 F.3d 881, 888 (9th Cir. 1996). Plaintiffs have not demonstrated in this instance how the request for discovery would uncover specific facts which would defeat summary judgment. *See State of California v. Campbell*, 138 F. 3d 772, 779 (9th Cir. 1998). Evidence pertaining to past conduct of the FPD and/or Officer Ayello would not shed any further light on the circumstances of Gardner's death or provide any additional information as to the reasonableness of Officer Ayello's conduct. As all of Plaintiffs' claims are reliant on proving Plaintiffs have a Fourth Amendment excessive force claim, and the requested discovery does not seek to provide specific facts regarding that claim, Plaintiffs fail to make a sufficient showing to merit Rule 56(f) relief.

Plaintiffs' Rule 56(f) request for a stay pending further discovery is DENIED.

# V. MOTION FOR SUMMARY JUDGMENT

## A. Legal Standard

Summary judgment is proper if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).

If the moving party would bear the burden of proof on an issue at trial, that party must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). In contrast, if the non-moving party bears the burden of proof on an issue, the moving party can prevail by "merely pointing out that there is an absence of evidence" to support the non-moving party's case. *Id*. When the moving party meets its burden, the non-moving party must demonstrate that there are genuine disputes as to material facts by either:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Celotex Corp.*, the Supreme Court held

> The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which the party will bear the burden of proof at trial. In such a situation, there can be no genuine issues as to any material fact, since a complete failure of proffer

5

> concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Id*. at 322 (internal citations and quotations omitted). Parties who present mere allegations and claims that they will discredit the moving party's evidence at trial fail to meet the burden placed upon them. *T.W. Elec. Serv., Inc., v. Pac. Elec. Contractors Ass'n,* 809 F. 2d 626, 630 (9th Cir. 1987). "The non-moving party must do more than show there is some metaphysical doubt as to the material facts at issue." *In re Oracle Corp. Sec. Litig*., 627 F.3d 376, 387 (9th Cir. 2010) (internal citations and quotations omitted). In such cases, "the moving party is entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of [their] case with respect to which [they have] the burden of proof." *Celotex Corp*, 477 U.S. at 323.

**B.     Analysis**

    **1.     Violations of Decedent's Fourth Amendment Rights**

In their first and second claims for relief, Plaintiffs bring § 1983 claims for violation of Gardner's Fourth Amendment rights. In Fourth Amendment excessive force actions brought under § 1983, the two primary inquiries posed by most motions for summary judgment are (1) whether there was a constitutional violation and (2) whether the officer was entitled to qualified immunity. *Pearson v. Callahan,* 555 U.S. 223 (2009). Here, Defendants' motion for summary judgment focuses only on the first prong: whether there was a constitutional violation. In evaluating this issue, the question is "whether the uncontroverted evidence could reasonably be found to show that the officer's use of force was unreasonable." *De Contreras v. City of Rialto*, 894 F. Supp. 2d 1238, 1249 (C.D. Cal. 2012). Such claims are analyzed under the objective reasonableness standard. *Arpin v. Santa Clara Valley Trans. Agency*, 261 F. 3d 912, 921 (9th Cir. 2001).

In determining the reasonableness of the force used, courts must carefully balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal citations and

quotations omitted). Courts must consider the following three factors: (1) the severity of the suspect's alleged crime; (2) the threat posed by the suspect to the officers and the public; and (2) whether the suspect was actively resisting or evading arrest. *Id*. An officer may use deadly force to effect an arrest "if, under the circumstances, he reasonably believed such force was necessary to protect himself or others from death or serious bodily harm." *Price v. Sery*, 513 F. 3d 962, 969 (9th Cir. 2008). *See also, Ryder v. City of Topeka*, 814 F. 2d 1412, 1419 (10th Cir. 1987) (Deciding that it was constitutional for a police officer to use deadly force when a suspect was fleeing from the commission of an inherently violent crime). Furthermore, "the reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. Reasonableness is determined in "light of all the relevant circumstances." *Smith v. City of Hemet*, 394 F. 3d 689, 701 (9th Cir. 2005). Therefore, the courts must consider facts and circumstances such as the availability of alternative methods of capture or subduing a suspect and whether warnings were given. *Id*.

The Ninth Circuit has cautioned in viewing these cases,

> Deadly force cases pose a particularly difficult problem…the officer defendant is often the only surviving eyewitness. Therefore, the judge must ensure that the officer is not taking advantage of the fact that the witness most likely to contradict his story – the person shot dead – is unable to testify. The judge must carefully examine all the evidence in the record, such as medical reports, contemporaneous statements by the officer and the available physical evidence, as well as any expert testimony proffered by the plaintiff, to determine whether the officer's story is internally consistent and consistent with other known facts…In other words, the court may not simply accept what may be a self-serving account by the police officer. It must also look at the circumstantial evidence that, if believed, would tend to discredit the police officer's story, and consider whether this evidence could convince a rational factfinder that the officer acted unreasonably.

*Scott v. Henrich*, 39 F. 3d 912, 915 (9th Cir. 1994).

Plaintiffs raise various factual disputes, however, none of them raises a genuine issue of material fact precluding summary judgment. Whereas Defendants have provided declarations and a coroner's

report to support Officer Ayello's version of the events, Plaintiffs have not provided medical reports, expert testimony, contemporaneous statements, or any other evidence that raises a genuine issue of material fact. Therefore, there is no evidence that discredits Officer Ayello's version of the events. Allegations alone do not put facts in dispute. *T.W. Elec. Serv., Inc.,* 809 F. 2d at 630. The Court therefore analyzes the events which led to Gardner's death based on the undisputed facts provided by the Defendants.

Officer Ayello arrived at the scene knowing that two men had broken into the Cash Express and had threatened a civilian with a weapon. DSSUF ¶¶ 3-5. Although Plaintiffs allege that it was not Gardner that threatened the civilian with the gun, they offer no evidence to support this assertion. Even if the assertion had evidentiary support, it is undisputed that Officer Ayello had no way of knowing that information at the time. After hearing a loud bang, as though someone had kicked open a door, Officer Ayello went to investigate the noise and found Gardner scaling a fence. DSSUF ¶¶ 3-5. Officer Ayello loudly identified himself as police and ordered Gardner to freeze several times. *Id*. ¶ 5. Instead of following orders, Gardner reached his hands into his waistband, at which point, Officer Ayello shot Gardner.[5] *Id*. ¶¶ 6-9.

Under the circumstances, Officer Ayello had reason to believe at least one weapon was involved in a crime being committed inside the Cash Express. The fact that it was ultimately determined that Gardner was unarmed is not dispositive. In analyzing similar scenarios, courts have found that ultimately it is irrelevant whether or not a suspect was armed because the police in the moment had no way of knowing this information. *Reese v. Anderson*, 926 F. 2d 494, 501 (5th Cir. 1991) (Holding that it

---

[5] Plaintiffs allude to a claim for indifference to serious medical needs, SAC at ¶ 26(f), however, they provide no facts which substantiate this claim. Plaintiffs allege that after Gardner was shot he survived for thirty minutes. SAC at ¶ 26(e). During this time, the Plaintiffs allege that a police officer hit Gardner in the head with the butt of a gun and refused to remove Gardner's handcuffs so that he could receive emergency medical attention. Doc. 20 at 2. Plaintiffs have not provided any evidence a jury could reasonably use to render a verdict in their favor on such claims. *In re Oracle Corp*., 627 F. 3d at 387. Indeed, they do not provide any evidence to substantiate these allegations. As such, Defendants are entitled to summary judgment on any claim for indifference to serious medical need or any related claim that stems from such allegations.

was reasonable for an officer to shoot a suspect who lowered his hands out of sight of an officer after being instructed by the officer to raise his hands when the officer reasonably believed the suspect had access to a weapon). *See also*, *Baldridge v. City of Santa Rosa*, No. C 97-3047 SI, 1999 WL 66141, at *7 (N.D. Cal. Feb. 9, 1999) (Holding that it was irrelevant that the decedent was unarmed as his actions alone "could cause a reasonable officer to fear imminent and serious physical harm."); *Barnes v. City of Pasadena*, 508 Fed. Appx. 663, 665 (9th Cir. 2013) ("Even if an issue of fact existed about the presence of a gun, the determinative issue was whether the officers reasonably believed [suspect] had a gun and posed an immediate threat to safety.") The Eighth Circuit has held, "an officer is not constitutionally required to wait until he sets eyes upon the weapon before employing deadly force to protect himself against a fleeing suspect who turns and moves as though to draw a gun." *Thompson v. Hubbard*, 257 F. 3d 896, 899 (8th Cir. 2001).

Here, Gardner was attempting to evade arrest by fleeing the scene when Officer Ayello ordered him to freeze. Gardner did not freeze but rather moved his hands towards his waistband, an action which the officer believed was a motion to reach for a weapon. The undisputed facts show the following: Officer Ayello came upon Gardner as he was attempting to flee the scene of the felony where a gun had been used to threaten the life of a civilian; Gardner did not follow Officer Ayello instructions to freeze but rather continued to try and evade arrest by jumping a fence and then motioned as though he were reaching for a weapon in his waistband. Viewing the totality of the circumstances, the uncontroverted evidence cannot reasonably be found to show that the officer's use of force was unreasonable. Therefore, Gardner's Fourth Amendment rights were not violated and Defendants are entitled to summary judgment on Plaintiffs' claims for excessive force.

C.      **Violations of Plaintiffs' Fourteenth Amendment Rights**

In their third and fourth claims for relief, Plaintiffs assert a § 1983 due process loss of companionship claim. Parents and children of a person killed by a state official may assert a due process claim based on loss of companionship. *Moreland v. Las Vegas Metropolitan Police*, 159 F. 3d 365, 371

(9th Cir. 1998). "Official conduct that shocks the conscience in depriving parents of that interest is cognizable as violation of due process…in determining whether excessive force shocks the conscience, the court must first ask whether the circumstances are such that actual deliberation by the officer is practical." *Wilkinson v. Torres*, 610 F. 3d 546, 554 (9th Cir. 2010). When there is no actual deliberation and "a law enforcement officer makes a snap judgment because of an escalating situation, his conduct may only be found to shock the conscience if he acts with a purpose to harm unrelated to legitimate law enforcement objectives." *Id*. Here, Officer Ayello acted with the legitimate purpose of apprehending Gardner whom he reasonably believed was involved in a felony crime. Officer Ayello's conduct does not shock the conscience based on the undisputed facts presented to the Court.

Furthermore, this district has held that a plaintiff's Fourteenth Amendment rights to companionship of a decedent are derived from the decedent's constitutional rights. *Estate of Torres v. Terhune*, No. CIV. S982211WBSGGH, 2002 WL 32107950, at *10 (E.D. Cal. Jan. 9, 2002). Because the Court finds that Defendants did not violate Gardner's constitutional rights, Plaintiffs' Fourteenth Amendment claim also fails.

Defendants' motion for summary judgment as to Plaintiffs' § 1983 claim based upon the Fourteenth Amendment is GRANTED.

**D.** **Claims against the City of Fresno and the Chief of Police**

Plaintiffs' fifth claim alleges liability against the City of Fresno and Chief of Police Jerry Dyer for conspiracy in the use of excessive force. Plaintiffs allege that the City of Fresno is vicariously liable for the intentional and/or negligent acts and omissions of the officer that killed Gardner; that the FPD failed to address customs and policies which led to the use of excessive force; and that they failed to adhere to an administrative process which would have addressed the use of excessive force. SAC at ¶¶ 40-42. Defendants contend that Plaintiffs' allegations are unproven. Doc. 19 at 10.

To hold a public entity, such as the City of Fresno, or government agents in their official capacity, such as the Chief of Police, liable under a § 1983 claims, a plaintiff must show that the

government entity maintained a policy or custom that served as the moving force behind the constitutional violation. *Monell v. New York City Dept. of Social Servs*., 436 U.S. 658, 694-95 (1978). Thus, to establish liability, a plaintiff must first establish that an officer deprived him of a constitutional right and, second, show that an official city policy, custom, or practice was the moving force behind the constitutional injury. *Los Angeles v. Heller*, 476 U.S. 796, 799 (1986).

As discussed above, neither Gardner's nor Plaintiffs' constitutional rights were violated. This alone nullifies any *Monell* claim that Plaintiffs make against the City of Fresno or the Chief of Police. Even assuming *arguendo* that Plaintiffs had demonstrated that a constitutional violation had occurred, the Plaintiffs have not provided the Court with any showing that this violation came as part of a policy, custom, or practice. Accordingly, Defendants' motion for summary judgment is GRANTED.

## VI. CONCLUSION AND ORDER

For the reasons set forth above, Defendants' Motion for Summary Judgment, Doc. 19, is GRANTED in its entirety. All pending deadlines, including the pretrial date of April 22, 2015 and the trial date of June 2, 2015, are vacated.

IT IS SO ORDERED.

Dated:   **March 11, 2015**              **/s/ Lawrence J. O'Neill**
                                          UNITED STATES DISTRICT JUDGE